**Andre L. WIGGINS, Plaintiff,**

v.

**Special Officer QUESENBERRY and Officer Marc A. Ramirez, Defendants.**

**Civil No. 4:16cv34**

United States District Court, E.D. Virginia, **Newport News Division.**

Signed December 6, 2016

James S. Ellenson, Elizabeth N. Culpepper, for Plaintiff.

Bradley D. Reeser, for Defendant Quesenberry.

Alan B. Rashkind, James A. Cales, III, for Defendant Ramirez.

## MEMORANDUM ORDER

Mark S. Davis, UNITED STATES DISTRICT JUDGE

This matter comes before the Court on a motion to dismiss filed by Defendant Officer Marc A. Ramirez, ECF No. 15, and a motion to dismiss filed by Defendant Special Officer Quesenberry, ECF No. 18. In his Second Amended Complaint,[1] Plaintiff Andre L. Wiggins alleges that Defendants[2] violated his constitutional rights when Defendant Ramirez used excessive force in searching his person. 2d Am. Compl., ECF No. 27. Plaintiff alleges, as to both Defendant Ramirez and Defendant Quesenberry, two claims under 42 U.S.C. § 1983 (one claim under the Fourth Amendment and, alternatively, one claim under the Fourteenth Amendment) and one claim of gross negligence under Virginia law. Id. at ¶¶ 39–40. Plaintiff further alleges that Defendant Ramirez committed the Virginia common law tort of assault and battery. Id. at ¶ 42(b). Plaintiff seeks ten million dollars ($10,000,00.00) as compensatory and punitive damages. Id. at 7.

### I.

Plaintiff Andrew L. Wiggins is a resident of Hampton, Virginia. 2d Am. Compl. ¶ 1. At all relevant times, Defendant Quesenberry and Defendant Ramirez were police officers employed by the City of Hampton. Id. at ¶¶ 4–5. The facts, as alleged by Plaintiff and assumed to be true

for the purpose of a motion to dismiss under Rule 12(b), Kensington Volunteer Fire Dep't v. Montgomery Cty., 684 F.3d 462, 467 (4th Cir. 2012), show the following.

On May 14, 2015, at approximately 2:00 a.m., Plaintiff was a passenger in a vehicle that was stopped by police on suspicion that the driver was operating the vehicle with a suspended license. 2d Am. Compl. ¶¶ 8–9. Sergeant Snyder, Defendant Quesenberry, and Defendant Ramirez responded to the scene. Id. at ¶ 16. Plaintiff was moved to the rear of the vehicle while the officers investigated the driver. Id. at ¶ 10. Plaintiff was "chatting amiably" with Sergeant Snyder in the back of the vehicle when, according to Plaintiff, Defendant Ramirez "yanked" Plaintiff out of the vehicle "by the crotch," id. at ¶¶ 11–12, causing Plaintiff "a lasting groin injury," id. at ¶ 13.

Defendant Ramirez then handcuffed Plaintiff's hands behind Plaintiff's back in order to search him. Id. at ¶ 17. While Plaintiff was handcuffed, Defendant Ramirez placed Plaintiff against the vehicle door and "ripped [Plaintiff's] foot from the ground" in order to search inside Plaintiff's boot. Id. at ¶¶ 18–19. Plaintiff "repeatedly" told Defendant Ramirez "not to let him fall." Id. at ¶ 20. At some point, Plaintiff fell to the pavement. Id. at ¶ 21. This fall resulted in a mandibular fracture of Plaintiff's jaw and "other injuries," including the loss of several teeth. Id. at ¶¶ 21–22. Plaintiff had multiple surgeries to treat these injuries and "had his jaw wired shut for weeks at a time on three

1. While Plaintiff captioned his second Amended Complaint as "Amended Complaint," ECF No. 27, for clarity, the Court will refer to it as the "Second Amended Complaint."

2. Plaintiff originally sued five defendants: City of Hampton, Chief Terry Suit, Sergeant Snyder, Special Officer Quesenberry, and Of-

ficer Ramirez. Compl., ECF No. 1. On October 24, 2016, the parties filed a Stipulation of Dismissal With Prejudice, dismissing as defendants the City of Hampton, Chief Terry Suit, and Sergeant Snyder. ECF No. 30. Only Defendants Quesenberry and Ramirez remain.

separate occasions." Id. at ¶ 22. Plaintiff's total medical costs have been over one hundred and thirty thousand dollars, with additional bills and procedures still pending. Id. at ¶ 23.

Plaintiff filed the instant lawsuit on May 13, 2016, alleging a Section 1983 claim as to all defendants for a violation of his constitutional rights grounded in Defendant Ramirez's use of excessive force (under the Fourth Amendment, and alternatively, under the Fourteenth Amendment), a Virginia law claim of gross negligence as to all defendants, and a claim against Defendant Ramirez for assault and battery under Virginia law.[3] See generally Compl., ECF No. 1. Defendant Ramirez filed an answer on June 21, 2016. ECF No. 4. On June 22, 2016, Defendant Quesenberry[4] filed a motion to dismiss under Rule 12(b)(6) for failure to state a claim. ECF No. 11. Plaintiff filed an Amended Complaint under Rule 15(a) on July 1, 2016. ECF No. 13.

On July 13, 2016, Defendant Ramirez filed a motion to dismiss the Amended Complaint under Rule 12(b)(6), ECF No. 15, and filed an answer to the Amended Complaint, ECF No. 17. On July 15, 2016, Defendant Quesenberry filed a motion to dismiss the Amended Complaint under Rule (12) (b) (6). ECF No. 18. On July 22, 2016, Plaintiff filed a motion for leave to amend the complaint a second time and filed a response to the pending motions to dismiss. ECF Nos. 22–23. Defendant Quesenberry filed a rebuttal brief on July 28,

2016. ECF No. 24. On August 8, 2016, the Court granted the motion for leave to amend and ordered the filing of the Second Amended Complaint, with all of Defendants' previous pleadings deemed responsive to Plaintiff's Second Amended Complaint. ECF No. 26. The Second Amended Complaint was filed the same day. ECF No. 27. Thus, before the Court is the motion to dismiss filed by Defendant Ramirez, ECF No. 15, and the motion to dismiss filed by Defendant Quesenberry, ECF No. 18. Having been fully briefed, this matter is ripe for review.

## II.

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a) (2). A motion to dismiss may be granted when a complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint fails to state a claim if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Though a complaint need not be detailed, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. at 555, 127 S.Ct. 1955; see Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). The plausibility requirement is "not akin to a 'probability requirement,' but it asks for

---

**3.** Plaintiff begins his Second Amended Complaint by moving for "judgment against the defendants in their individual capacities pursuant to section 8.01–195.1 of the Code of Virginia." 2d Am. Comp. 1. This statute is the title section for the Virginia Tort Claims Act. Va. Code § 8.01–195.1 ("This article shall be known and may be cited as the 'Virginia Tort Claims Act.' "). Plaintiff is not suing the Commonwealth of Virginia or any employee of the Commonwealth of Virginia, but is instead su-

ing municipal employees, making this statutory reference seem misplaced.

**4.** The motion to dismiss was filed jointly by Defendant Quesenberry and Sergeant Snyder. Sergeant Snyder was dismissed from the case, ECF No. 30, and thus all joint filings by Defendant Quesenberry and Sergeant Snyder will be referenced as filed solely by Defendant Quesenberry.

more than a sheer possibility" that a defendant is liable. Iqbal, 556 U.S. at 678, 129 S.Ct. 1937 (quoting Twombly, 550 U.S. at 556, 127 S.Ct. 1955). In other words, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 663, 129 S.Ct. 1937.

A motion to dismiss tests the sufficiency of a complaint without resolving factual disputes, and a district court " 'must accept as true all of the factual allegations contained in the complaint' and 'draw all reasonable inferences in favor of the plaintiff.' " Kensington Volunteer Fire Dep't, 684 F.3d at 467 (quoting E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 440 (4th Cir. 2011)). Accordingly, " 'Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations.' " Twombly, 550 U.S. at 555, 127 S.Ct. 1955 (quoting Neitzke v. Williams, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989)) (omission in original). A complaint may therefore survive a motion to dismiss "even if it appears 'that a recovery is very remote and unlikely.' " Id. (quoting Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)).

Finally, although the truth of the facts alleged is presumed, district courts are not bound by the "legal conclusions drawn from the facts" and "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." E. Shore Mkts., Inc. v. Assocs. Ltd. P'ship, 213 F.3d 175, 180 (4th Cir. 2000). "Threadbare recitals of the elements of a cause of

action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678, 129 S.Ct. 1937 (citing Twombly, 550 U.S. at 555, 127 S.Ct. 1955). In order to survive a motion to dismiss under Rule 12(b)(6), "a complaint must include 'more than an unadorned, the-defendant-unlawfully-harmed-me accusation.' " Johnson v. Am. Towers, LLC, 781 F.3d 693, 709 (4th Cir. 2015) (quoting Iqbal, 556 U.S. at 678, 129 S.Ct. 1937).

### III.

Plaintiff alleges two main claims: first, a claim under Section 1983 alleging that Defendants' use of excessive force violated his right to due process under the Fourteenth Amendment or alternatively his right to be free from unreasonable search and seizure under the Fourth Amendment,[5] and second, a claim under Virginia law alleging that the Defendants' gross negligence caused his injuries. Defendant Ramirez moved to dismiss Plaintiff's Fourteenth Amendment claim, arguing that, as a matter of law, Plaintiff's claim may only arise under the Fourth Amendment, not the Fourteenth Amendment. Def. Ramirez Opening Br. 3–5, ECF No. 16. Defendant Quesenberry moved to dismiss Plaintiff's complaint, arguing that Plaintiff has not alleged a plausible claim for excessive force because Defendant Ramirez's actions were objectively reasonable, and further arguing that Plaintiff has not sufficiently stated a claim against Defendant Quesenberry for bystander or supervisory liability. Def. Quesenberry Opening Br. 11, 14–17, ECF No. 19. Finally, Defendant Quesenberry argues that Plaintiff has not pled sufficient facts to support a claim for gross

---

5. In his complaint, Plaintiff claims a violation of his "fourth amendment rights to due process of law." 2d Am. Compl. ¶ 40. This is assumed to be a typographical error as Fourth Amendment rights do **not** include due

process, which is a Fourteenth Amendment right, but rather specify the right to be free from unreasonable searches and seizures. See U.S. Const, amend. IV, XIV.

negligence under Virginia law. Id. at 19–21. The Court will address each argument in turn.

### A.

In his motion to dismiss, Defendant Ramirez argues that, as a matter of law, Plaintiff's claim may only arise under the Fourth Amendment, and therefore Plaintiff's Fourteenth Amendment claim should be dismissed because it fails to state a claim upon which relief may be granted. Plaintiff alleges that Defendants violated 42 U.S.C. § 1983, which provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. "To establish liability under § 1983, a plaintiff must show that the defendant acting under color of law, violated the plaintiff's federal constitutional or statutory rights, and thereby caused injury." Woodson v. City of Richmond, 2 F.Supp.3d 804, 809 (E.D. Va. 2014) (citing Brown v. Mitchell, 308 F.Supp.2d 682, 692 (E.D. Va. 2004)). "Section 1983 is a vehicle for the vindication of pre-existing federal rights rather than an independent source of substantive rights." Id. (citing Brown, 308 F.Supp.2d at 692). It is undisputed that Defendant Ramirez was acting under color of law when he searched Plaintiff, and therefore the Court must next identify "the specific constitutional right allegedly infringed by the challenged application of force." Graham v. Connor, 490 U.S. 386, 394, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).

Plaintiff alleges that Defendants violated his constitutional right to be free from police officers using excessive force, a right protected under both the Fourth and Fourteenth Amendments. The Fourth Amendment prohibits police from using excessive force "in the course of making an arrest, investigatory stop, or other seizure of his person." See Graham, 490 U.S. at 388, 109 S.Ct. 1865; Jones v. Buchanan, 325 F.3d 520, 527 (4th Cir. 2003) ("The Fourth Amendment prohibition on unreasonable seizures bars police officers from using excessive force to seize a free citizen."). Once an individual has been arrested and is awaiting an adjudication of guilt as a "pretrial detainee" the Fourteenth Amendment prohibits police from using excessive force " 'that amounts to punishment.' " Kingsley v. Hendrickson, —— U.S. ——, 135 S.Ct. 2466, 2473, 192 L.Ed.2d 416 (2015) (quoting Graham, 490 U.S. at 395 n.10, 109 S.Ct. 1865).

Defendant Ramirez argues that Plaintiff did not properly allege a claim under the Fourteenth Amendment Due Process Clause because Plaintiff was never "a pre-trial detainee within the meaning of the Due Process Clause." Def. Ramirez Opening Br. 4. However, Plaintiff alleges that he "was under arrest for the purposes of the Fourth Amendment." 2d Am. Compl. ¶ 19. Moreover, while Plaintiff's response brief does not specifically address Defendant Ramirez's motion to dismiss, Plaintiff alleges that, based upon all of the filings, the "parties appear to agree that Plaintiff was 'seized' as defined under the Fourth Amendment," which would make the Fourteenth Amendment Due Process Clause the source of the applicable constitutional right. Pl.'s Resp. Br. 5, ECF No. 23.

The Fourth Amendment is the applicable constitutional right in this case. In Graham v. Connor, a closely analogous case, the United States Supreme Court clarified that the constitutional standard that "governs a free citizen's claim that law enforcement officials used excessive force in the course of making an arrest, investigatory stop, or other 'seizure' of his person" is the Fourth Amendment's "objective reasonableness" standard. Graham, 490 U.S. at 388, 109 S.Ct. 1865. In Graham, a police officer stopped a vehicle after observing Graham run quickly in and out of a convenience store. Id. at 388–89, 109 S.Ct. 1865. The driver told the officer that Graham was diabetic and needed to get sugar. Id. at 389, 109 S.Ct. 1865. The officer told Graham to wait while the officer requested backup assistance. After other officers arrived on the scene, one of the officers rolled Graham over on the sidewalk and cuffed his hands tightly behind his back, despite Graham's pleas to get him some sugar. Subsequently, the officers lifted Graham up, carried him to the friend's car, and placed him face down on the hood. After Graham regained consciousness, the officers "threw him head-first into the police car," and refused to allow Graham's friend to give him some orange juice. Id. Ultimately, the officers received a report that Graham had done nothing wrong at the convenience store, and the officers drove Graham home and released him. During this encounter with the police, Graham sustained a broken foot, cuts on his wrists, a bruised forehead, and an injured shoulder. Id. at 390, 109 S.Ct. 1865. The Court described the detention of Graham as an excessive force claim "in the context of an arrest or investigatory stop of a free citizen," and held that it was "most properly characterized as ... invoking the protections of the Fourth Amendment." Id. at 394, 109 S.Ct. 1865.

The facts of the instant case are closely analogous to the facts in Graham. In both situations, police stopped a vehicle for suspicious activity, the suspect exited the vehicle, police officers questioned the suspect, handcuffed the suspect behind the suspect's back, used some amount of physical force on the suspect, and the suspect alleged that he sustained injuries as a result of the police officer's actions. In Graham, the Supreme Court squarely held the Fourth Amendment, and not substantive due process, governs excessive force claims in this factual circumstance.[6] Id.

6. Although Plaintiff does not allege that Defendant Quesenberry's actions constituted excessive force. Plaintiff does allege that Defendant Quesenberry is liable for Defendant Ramirez's excessive force based on bystander and supervisory liability. While Defendant Ramirez argues that the excessive force claim against him flows from the Fourth Amendment, Def. Ramirez Opening Br. 4, Defendant Quesenberry, relying on Riley v. Dorton, 115 F.3d 1159 (4th Cir. 1997), abrogated on other grounds by Wilkins v. Gaddy, 559 U.S. 34, 130 S.Ct. 1175, 175 L.Ed.2d 995 (2010), initially argued such claim flows from the Fourteenth Amendment, Def. Quesenberry Opening Br. 8, while later arguing in his reply brief that Plaintiff's claim for excessive force resulting in the groin injury should be governed by the Fourth Amendment and Plaintiff's claim of excessive force resulting in Plaintiff's fall should be governed by the Fourteenth Amendment, Def. Quesenberry Reply Br. 5 n.2. In Riley, the Court of Appeals for the Fourth Circuit rejected the argument that Fourth Amendment protection continued after an arrestee was in police custody. Riley, 115 F.3d at 1161. In determining the applicable constitutional provision, the Riley court noted that the events at issue "took place at least two hours and ninety miles from the time and place of [the defendant's] arrest." Id. Moreover, the defendant had been apprehended pursuant to a valid arrest warrant, and was " 'being held prior to a formal adjudication of guilt.' " Id. (quoting United States v. Cobb, 905 F.2d 784, 788 (4th Cir. 1990)). According to the court, these facts made the defendant a "pretrial detainee," and there-

Therefore, because the Fourth Amendment provides the applicable constitutional right in this case—the right to be free from police using excessive force during an arrest or investigatory stop of a free citizen—the motion to dismiss the Section 1983 claim against Defendant Ramirez based upon the Fourteenth Amendment Due Process Clause is **GRANTED**.[7]

**B.**

In his motion to dismiss, Defendant Quesenberry argues that Plaintiff has not sufficiently alleged a claim for excessive force because Defendant Ramirez's actions were objectively reasonable. Moreover, Defendant Quesenberry argues that, even if Defendant Ramirez used excessive force, Defendant Quesenberry cannot be held directly liable for Defendant Ramirez's actions and Plaintiff has not sufficiently stated a claim alleging either bystander liability or supervisory liability. Finally, Defendant Quesenberry argues that Plaintiff failed to plead sufficient facts to support a claim for gross negligence under Virginia law.

**1.**

Defendant Quesenberry argues that Plaintiff has not sufficiently alleged a claim for excessive force because Defendant Ramirez's actions were objectively reasonable as part of a "constitutionally permissible investigative detention, incident to a con-

stitutionally authorized search." Def. Quesenberry's Opening Br. 12 (citing Terry v. Ohio, 392 U.S. 1, 23–24, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). Plaintiff's claims against Defendant Quesenberry rest on the premise that Defendant Ramirez used excessive force in seizing and searching Plaintiff.

■ The Fourth Amendment guarantees citizens the right "to be secure in their persons ... against unreasonable searches and seizures." U.S. Const, amend. IV. As explained above, an excessive force claim that "arises in the context of an arrest or investigatory stop of a free citizen, ... is most properly characterized as one invoking the protections of the Fourth Amendment," which guarantees the right to be free from unreasonable searches and seizures. Graham, 490 U.S. at 394, 109 S.Ct. 1865. Thus, a claim of excessive force by police during an arrest or investigatory stop is properly analyzed under the Fourth Amendment by a determination of whether the officer's conduct was "objectively reasonable." Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (quoting Graham, 490 U.S. at 397, 109 S.Ct. 1865); see also Kingsley, 135 S.Ct. at 2473 (finding that excessive force claims under the Fourteenth Amendment, just like excessive force claims under the Fourth Amendment, were properly analyzed under a standard of objective reasonableness).

fore the Fourth Amendment protections requiring reasonable search and seizure were inapplicable. Id. at 1163. The facts in Riley are distinguishable from the facts in the instant case. Unlike in Riley, the events that Plaintiff complains of occurred in close temporal and special proximity to the initial investigatory stop of Plaintiff's vehicle. Moreover, Plaintiff has not alleged: (1) that an arrest warrant for Plaintiff existed at the time of these events, (2) that he was ever formally arrested, or (3) that he was taken

back to the police department to await formal adjudication of guilt.

7. Officer Ramirez only moved to dismiss Plaintiff's Fourteenth Amendment claim, and did not raise qualified immunity as an affirmative defense. See Def. Ramirez's Opening Br. 3–5. Therefore, Plaintiff's following claims against Defendant Ramirez remain: a Section 1983 claim under the Fourth Amendment, Virginia gross negligence, and Virginia assault and battery.

The assessment of objective reasonableness is not mechanistic, but is evaluated based on the "facts and circumstances of each particular case." Graham, 490 U.S. at 396, 109 S.Ct. 1865. Thus, while reasonableness is an objective test, it is based on the perspective and knowledge of the defendant officer. Id. ("The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."). A court must weigh the nature of the intrusion on the plaintiff's rights "against the countervailing governmental interests at stake," id. at 396, 109 S.Ct. 1865, which requires an assessment of the totality of the circumstances, evaluating factors such as the amount of force used, the extent of the plaintiff's injuries, the severity of the predicate crime, the immediate threat posed by the suspect, and whether he resisted arrest or attempted to flee, Turmon v. Jordan, 405 F.3d 202, 207 (4th Cir. 2005) (internal citations omitted). " 'Not every push or shove' " is a constitutional violation, even if the action " 'may later seem unnecessary in the peace of a judge's chambers.' " Graham, 490 U.S. at 396, 109 S.Ct. 1865 (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973)). Plaintiff must allege enough facts relevant to the reasonableness of the officers' actions to "raise a right to relief above the speculative level." Twombly, 550 U.S. at 555, 127 S.Ct. 1955.

Here, Plaintiff alleges facts that, if true, support a plausible claim of objectively unreasonable force by Defendant Ramirez. Plaintiff alleges that Defendant Ramirez responded with more force than necessary when he "yanked" Plaintiff out of the vehicle from a "seated, passive position by the crotch," 2d Am. Compl. ¶ 12, and when Defendant Ramirez "forcefully ripped [Plaintiff's] foot from the ground," id. at ¶ 19. Plaintiff explains that the extent of his injuries included a lasting groin injury, a mandibular fracture of the jaw, and the loss of several teeth, resulting in multiple surgeries, Plaintiff's jaw wired shut for weeks at a time on three separate occasions, and over one hundred and thirty thousand dollars of medical bills, with more bills and procedures pending. Id. at ¶¶ 13, 21–23. According to Plaintiff, none of the officers present at the scene did anything to prevent his groin injury or his fall. Id. at ¶¶ 14–15, 24. Plaintiff alleges that the severity of any threat reasonably perceived by the officer could only be minimal because at the time of the incident he was "cooperative and friendly with law enforcement" and was a "cooperative citizen." Id. at ¶¶ 17, 25. Finally, according to the facts pled, Plaintiff made no attempt to flee or resist arrest. Id. Thus, Plaintiff has alleged facts that, if true, support a plausible claim for objectively unreasonable conduct by Defendant Ramirez because Defendant Ramirez used force to search Plaintiff's person that was disproportionate to the threat that Plaintiff posed as a cooperative citizen.

Next, Plaintiff must allege facts indicating that the objectively unreasonable police conduct caused the Plaintiff's injury. Woodson, 2 F.Supp.3d at 809. Plaintiff alleges that Defendant Ramirez's action in yanking Plaintiff from the vehicle by the crotch "caused a lasting groin injury," 2d Am. Compl. ¶ 12, and that Defendant Ramirez's action in ripping Plaintiff's foot from the ground in order to search Plaintiff's boot "directly resulted in the injuries delineated," id. at ¶ 25. Finally, Plaintiff must allege that Defendant Ramirez intended to commit the physical action because negligently-inflicted harm is "categorically beneath" the threshold for unconstitutional excessive force. See Kingsley, 135 S.Ct. at 2472 (noting that negligently inflicted injuries cannot be

unconstitutional excessive force under the Due Process "objectively reasonable" standard adopted from Fourth Amendment jurisprudence). Here, Plaintiff alleges that Defendant Ramirez took the affirmative actions of "yank[ing]" Plaintiff from the vehicle and "grabb[ing]" Plaintiff's foot. 2d Am. Compl. ¶¶ 12, 18. That the results of Defendant Ramirez's actions (the groin injury and fall) were accidental and thus unintended, as Defendant Quesenberry argues, Def. Quesenberry Reply Br. 8, does not make Defendant Ramirez's actions of grabbing or yanking accidental, see Kingsley, 135 S.Ct. at 2472. As Plaintiff's allegations are accepted as true for the purpose of a motion to dismiss under Rule 12(b)(6), Kensington Volunteer Fire Dep't, 684 F.3d at 467, Plaintiff has pled a plausible claim for objectively unreasonable excessive force by Defendant Ramirez, and thereby pled the underlying offense for the claim against Defendant Quesenberry.

## 2.

■ Defendant Quesenberry argues that, even if Defendant Ramirez used excessive force, Defendant Quesenberry cannot be held directly liable for Defendant Ramirez's actions and Plaintiff has not sufficiently stated a claim alleging bystander or supervisory liability. "As a general matter, a law officer may incur § 1983 liability only through affirmative misconduct." Randall v. Prince George's Cnty., 302 F.3d 188, 202 (4th Cir. 2002). However, the Fourth Circuit recognizes bystander liability and supervisory liability as the two limited exceptions to this general rule in situations in which "an omission to act, when coupled with a duty to act, ... provide[s] a basis for liability." Id. at 203.

■ Plaintiff has not alleged sufficient facts to hold Defendant Quesenberry liable as a bystander. To be liable as a bystander, the officer must "(1) know[ ] that a fellow officer is violating an individual's constitutional rights; (2) ha[ve] a reasonable opportunity to prevent the harm; and (3) choose[ ] not to act." Id. at 204. To meet the knowledge requirement, the "bystanding officer must know of his fellow officer's misconduct." Id. at 213 n.24 (emphasis added). Plaintiff asserts that Defendant Quesenberry was in "close proximity" to Defendant Ramirez and Plaintiff. 2d Am. Compl. ¶ 14. However, "close proximity" is not the legal standard. Instead, Plaintiff must assert facts to show that Defendant Quesenberry was on notice that Defendant Ramirez was violating Plaintiff's constitutional rights. Randall, 302 F.3d at 213 n.24. Plaintiff has not done so, and thus fails to sufficiently allege the element of knowledge required for bystander liability. Moreover, Plaintiff's statements that Defendant Quesenberry "could and should have intervened" and that Defendant Quesenberry "at no time attempted to intervene, stop, or properly supervise Ramirez during this incident even though [he] had the capacity and duty to do so," 2d Am. Compl. ¶¶ 15, 24, are conclusory statements of law—that defendants had a duty and breached the duty—without any factual support. For example, Plaintiff does not allege the distance that Defendant Quesenberry stood from Plaintiff, the amount of time during which the incident occurred, or whether Defendant Quesenberry was even watching Plaintiff's interaction with Defendant Ramirez. See Smith v. Ray, 409 Fed.Appx. 641, 648 (4th Cir. 2011) (unpublished) (finding that officers could not be held liable on an excessive force claim on the basis of bystander liability when the officers were not present during the alleged use of excessive force). Therefore, Defendant Quesenberry's motion to dismiss the claim of excessive force on the basis of bystander liability is **GRANTED**.

 Plaintiff also has not alleged sufficient facts to hold Defendant Quesenberry vicariously liable as a supervisor of Defendant Ramirez. "[W]hen on notice of a subordinate's tendency to act outside the law, [supervisors are obligated] to take steps to prevent such activity." Randall, 302 F.3d at 203. Although not expected to prevent all illegal acts by subordinates, if a supervising officer is "deliberately indifferent" to his supervisory responsibility, "he then bears some culpability for illegal conduct by his subordinates, and he may be held vicariously liable for their illegal acts." Id. (citing Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994)). To prove supervisory liability, a plaintiff must demonstrate:

> (1) "that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff"; (2) "that the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices' "; and (3) "that there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff."

Randall, 302 F.3d at 206 (quoting Shaw, 13 F.3d at 799) (quotation marks in original). To show a "pervasive and unreasonable risk," a supervisor must have knowledge that the "conduct is widespread, or at least has been used on several different occasions." Id. A plaintiff must point to more than "a single incident or isolated incidents . . . for a supervisor cannot be expected . . . to guard against the deliberate criminal acts of his properly trained employees when he has no basis upon which to anticipate the misconduct." Id. (quoting Slakan v. Porter, 737 F.2d 368, 373 (4th Cir. 1984)) (emphasis added).

 Plaintiff fails to allege any facts indicating that there were past incidents of wrongful behavior by Defendant Ramirez or that Defendant Ramirez had a tendency to act outside the law. See generally 2d Am. Compl. Further, Plaintiff fails to allege that Defendant Quesenberry knew about any past misconduct or tendency towards misconduct by Defendant Ramirez. Plaintiff must allege something " 'more than an unadorned, the-defendant-unlawfully-harmed-me accusation.' " Johnson, 781 F.3d at 709 (quoting Iqbal, 556 U.S. at 678, 129 S.Ct. 1937). It is insufficient for Plaintiff to point to this incident as the sole basis of his claim based on supervisory liability. Randall, 302 F.3d at 206 (requiring that a supervisor have knowledge that misconduct was "widespread" or at least occurred on multiple occasions). Thus, because Plaintiff fails to state more than this single incident of alleged misconduct, Plaintiff has not sufficiently pled a claim against Defendant Quesenberry based upon supervisory liability. Therefore, Defendant Quesenberry's motion to dismiss the excessive force claim based upon supervisory liability is **GRANTED**.

### 3.

Defendant Quesenberry argues that Plaintiff has not alleged sufficient facts for a claim of gross negligence under Virginia law, and further argues that Defendants' actions were not grossly negligent. Def. Quesenberry Opening Br. 20–21. Plaintiff does not make any specific statements regarding what constitutes gross negligence or how Defendant Quesenberry's actions meet each element, but merely states that "[t]he acts and conduct hereinbefore alleged constitute common law gross negligence under the laws of the Commonwealth of Virginia, and defendant City and defendants are liable for damages." 2d Am. Compl. ¶ 42(a). Plaintiff appears to allege

that Defendant Quesenberry was grossly negligent for failing to supervise Defendant Ramirez. Id. at ¶¶ 24, 26, 36.

Even assuming that Defendant Ramirez's actions were wrongful, as a matter of law, due to Virginia's sovereign immunity doctrine, Defendant Quesenberry could not be held liable for simple negligence in failing to properly supervise or train a subordinate officer. Hales v. City of Newport News, No. 4:11CV28, 2011 WL 4621182, at *4 (E.D. Va. Sept. 30, 2011) (finding that, for the purposes of analyzing tort claims under Virginia law, supervising police officers are "immune from liability for allegations of ordinary negligence associated with their decisions regarding supervising and training of subordinate police officers"); see Burns v. Gagnon, 283 Va. 657, 727 S.E.2d 634, 648 (2012) (describing the standard to prove gross negligence of an individual working for an immune governmental entity); see also Messina v. Burden, 228 Va. 301, 321 S.E.2d 657, 663–64 (1984) (expounding on the sovereign immunity doctrine in Virginia law); James v. Jane, 221 Va. 43, 282 S.E.2d 864, 869 (1980) (outlining a four-part test for sovereign immunity under Virginia law). To impose liability upon an individual with qualified immunity, such as Defendant Quesenberry, "the degree of negligence which must be shown . . . is elevated from simple to gross negligence." Burns, 727 S.E.2d at 646. Thus, to prevail against a motion to dismiss, Plaintiff must allege some facts to show that Defendant Quesenberry's actions were, at least plausibly, grossly negligent.

■■■■ To plausibly allege gross negligence, Plaintiff must allege some facts to prove that defendants' actions demonstrated an " 'utter disregard of prudence amounting to complete neglect of the safety of another.' " Burns, 727 S.E.2d at 647 (quoting Volpe v. City of Lexington, 281

Va. 630, 708 S.E.2d 824, 829 (2011)). Gross negligence "is a heedless and palpable violation of legal duty respecting the rights of others which amounts to the absence of slight diligence, or the want of even scant care." Id. "Deliberate conduct is important evidence on the question of gross negligence." Volpe, 708 S.E.2d at 829.

■■■ Plaintiff does not allege any specific facts describing how the alleged negligence, even if it occurred, rose to the level of gross negligence, or any facts to demonstrate that Defendant Quesenberry had actual supervisory authority over Defendant Ramirez. Plaintiff merely states that Defendant Quesenberry "responded to the scene," 2d Am. Compl. ¶ 16, was in "close proximity" to Plaintiff and Defendant Ramirez, id. at ¶ 14, "could and should have intervened," id. at ¶ 15, and that he did not attempt to "intervene, stop, or properly supervise Ramirez . . . even though [he] had the capacity and duty to do so," id. at ¶ 24. None of these statements explain what supervisory responsibilities Defendant Quesenberry had in the police department or in regards to Defendant Ramirez. See Johnson, 781 F.3d at 709 (affirming the dismissal of a complaint that "resemble[d] a prohibited fishing expedition rather than a properly pleaded complaint"); Migdal v. Rowe Price–Fleming Int'l, Inc., 248 F.3d 321, 326 (4th Cir. 2001) (internal quotations omitted) ("Conclusory allegations in a complaint, if they stand alone, are a danger sign that the plaintiff is engaged in a fishing expedition."). Moreover, while Plaintiff makes the cursory statement that Defendants' actions "constitute common law gross negligence," id. at ¶ 42(a), Plaintiff does not make any factual allegation as to how Defendant Quesenberry's actions (or inaction) demonstrated an "utter disregard of prudence" which amounted to "complete neglect" of Plaintiff's safety, see Burns, 727 S.E.2d at 647.

Plaintiff must plead something more than a blanket allegation claiming that there was a failure to supervise based upon the sole incident in which Plaintiff was injured. See Ross v. Prince George's Cty., No. CIV.A. DKC 11-1984, 2012 WL 1204087, at *9 (D. Md. Apr. 10, 2012) (dismissing allegations which merely "state[d] in conclusory terms that the County failed 'to adequately train and supervise officers in the proper use of force'"); Jackson v. Brickey, 771 F.Supp.2d 593, 604 (W.D. Va. 2011) ("[R]eferences to generalized deficiencies within the [police] department do not sufficiently flesh out [Plaintiff's] allegations."). Therefore, because Plaintiff's claim of gross negligence against Defendant Quesenberry fails to allege sufficient facts to state a plausible claim, Defendant Quesenberry's motion to dismiss this claim is **GRANTED**.

### IV.

For the reasons stated above, Defendant Ramirez's motion to dismiss, ECF No. 15, is **GRANTED**, and Defendant Quesenberry's motion to dismiss, ECF No. 18, is **GRANTED**.

The Court **PROVIDES** Plaintiff with leave to amend the Complaint to cure all defects within twenty one (21) days after the entry of this Memorandum Order. If Plaintiff fails to adequately amend the Complaint within the period prescribed, Plaintiff's claims will be dismissed with prejudice.

The Clerk is **REQUESTED** to send a copy of this Memorandum Order to all counsel of record.

**IT IS SO ORDERED.**