**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————

**No. 05-1005**

———————————

MAGGIE R. TAYLOR; HELEN E. BLAIN; HETTIE O. GEE; ANNA M. DAUGHTERY; VICTOR L. WILLIAMS, SR.; DENISE D. CAMERON; RONALD L. DAVIS; EMMA E. WILSON; EVA H. ROBINSON; ALMA MAYFIELD; DEBORAH L. COLE; KENNETH L. GORBY; ADA D. PERRY; MARGIE LANGFORD; VINSON L. BILLUPS; MARY L. SYKES; MELINDA C. DAARA; REDRENA GATLING; DORIS S. PARKER; RUTH C. BROOKS; SANDRA D. CLARK; SHIRLEY M. CLARK; VERA E. WYATT; BARBARA CYPRESS; MARJORIE CARRINGTON,

Plaintiffs - Appellants,

and

BLANCH E. BATTEN; CAROL H. TALIAFERRO; BUTCH DICKS; CAROLYN SCOTT; JOHN E. GATLING, JR.; HECTOR L. RABELL, JR.; HERBERT T. DOUGLAS, JR.; ANNIE N. HALL; JEAN A. DIGGS; LINDA P. F. BROWN; PHYLLIS D. GRIMES,

Plaintiffs,

versus

SIEMENS VDO AUTOMOTIVE CORPORATION, formerly known as Siemens Automotive Corporation; INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS, AFL-CIO; DISTRICT LODGE 74 OF THE INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS; LOCAL LODGE NO. 2461 OF THE INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS,

Defendants - Appellees.

Appeal from the United States District Court for the Eastern District of Virginia, at Newport News. Robert G. Doumar, Senior District Judge. (CA-03-129-4)

Argued: September 19, 2005                    Decided: November 7, 2005

Before SHEDD, Circuit Judge, HAMILTON, Senior Circuit Judge, and Joseph R. GOODWIN, United States District Judge for the Southern District of West Virginia, sitting by designation.

Affirmed by unpublished per curiam opinion. Judge Shedd wrote a separate opinion concurring in the result.

**ARGUED:** Jay Joseph Levit, LEVIT & MANN, P.C., Richmond, Virginia, for Appellants. Dana Lewis Rust, MCGUIREWOODS, L.L.P., Richmond, Virginia; James J. Vergara, Jr., VERGARA & ASSOCIATES, Hopewell, Virginia, for Appellees. **ON BRIEF:** Reid H. Ervin, Thomas A. Dyar, REID H. ERVIN, P.C., Norfolk, Virginia, for Appellants. Jennifer M. Campbell, MCGUIREWOODS, L.L.P., Richmond, Virginia, for Appellee Siemens VDO Automotive Corporation, formerly known as Siemens Automotive Corporation.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

PER CURIAM:

This labor case concerns a union dispute involving employees of Siemens VDO Automotive Corporation (Siemens) at its Newport News, Virginia plant. The district court rejected all of the claims brought by the plaintiffs, a minority faction of the plant's union employees. The plaintiffs appeal, and we affirm.

I

The plaintiffs are employees (or former employees) of Siemens and are members (or former members) of Local Lodge No. 2461 of the International Association of Machinists and Aerospace Workers (Local Lodge), which is affiliated with the International Association of Machinists and Aerospace Workers, AFL-CIO (International) and District Lodge 74 of the International Association of Machinists and Aerospace Workers (District Lodge).[1] The defendants are Siemens and the Union.

From August 24, 2001 through August 31, 2004, a collective bargaining agreement (the CBA) governed the terms and conditions of employment for bargaining unit production and maintenance employees at Siemens' Newport News, Virginia plant. The CBA established three overlapping shifts, each eight and a half hours long, to operate the plant Monday through Friday. Paragraphs 159-187 of the

---

[1]For ease of reference, at times, we will refer to the Local Lodge, the District Lodge, and the International collectively as the Union.

CBA governed how Siemens could implement a continuous shift operation if it wanted to operate the plant full-time on weekends. These provisions specified that the plant would be staffed on weekends with two groups of employees working twelve-hour day and twelve-hour night shifts exclusively on Saturdays and Sundays. The CBA referred to the proposed weekend day shift as the "[f]ourth" shift and the proposed weekend night shift as the "[f]ifth" shift. (J.A. 99). Employees assigned to either shift would work only twenty-four hours per week.

The language of the CBA is confusing on whether the CBA authorized modifications to the continuous shift provisions. On the one hand, Paragraph 162 of the CBA provided "[u]nless specifically modified herein, or subsequently modified by mutual agreement of the Union and Company, all provisions of the current Collective Bargaining Agreement will be applicable to the administration of this Program." (J.A. 98). On the other hand, Paragraph 204 of the CBA provided:

> No Agreement, waiver, alteration, understanding, variation or modification of any terms or conditions contained herein shall be made by any employee or group of employees, with the Company, and in no case shall it be binding upon the parties hereto, unless such agreement is made and executed in writing between the parties hereto, and the same has been ratified by the Union.

(J.A. 105).

In the fall of 2002, Siemens wanted to operate the Newport News plant continuously on weekends. This desire led Siemens to

engage in discussions with the Union concerning whether a move to continuous operations was feasible.

During these discussions, Siemens proposed to modify the CBA's continuous shift provisions. Under Siemens' proposal, each bargaining unit employee would work three twelve-hour shifts one week and four twelve-hour shifts the following week. All employees would have every other weekend off. No employees would work exclusively on weekends.

During its discussions with the Union, Siemens made it clear that it might move its plant's operations to Mexico if the Union was unwilling to agree to Siemens' proposal. To make this point clear to the Union, Siemens sent some members of the Union to Mexico to inspect its facility there.

On March 12, 2003, officials from Siemens and the Union signed a written "Memorandum of Understanding" (MOU) setting forth Siemens' proposed shift schedule. (J.A. 115). The MOU stated that this continuous shift schedule was necessary "to become more competitive, gain flexibility and secure long-term employment." (J.A. 115). The MOU tracked Siemens' original proposal, creating four crews working rotating twelve-hour shifts, with each crew to have every other weekend off.

On March 13, 2003, International Representative Stephen Spain posted a letter establishing March 20, 2003 as a date to "<u>discuss</u> and then to <u>vote</u> on the Memorandum of Understanding." (J.A. 356).

- 5 -

On March 18, 2003, Local Lodge members attending the monthly union meeting discussed the proposed MOU.  On March 20, 2003, the MOU was placed before the membership for a vote.  It was rejected by a vote of 161 to 155.

Suddenly realizing that their work could or might be sent to Mexico and that their very livelihoods were in jeopardy, several Local Lodge members then circulated a petition, which was signed by 245 members, calling for a "re-vote."  (J.A. 364).  The petition stated in part:

> A vote was taken on March 20th that the membership voted to reject.  The vote was very close.  However, many members were confused by rumors and bad advise [sic].  We feel our jobs could be in jeopardy and we want another chance to reconsider our future.  We want another vote to help maybe save our jobs.  We feel a re-vote couldn't harm anyone, and may help everyone.

(J.A. 364).

On March 27, 2003, Spain posted another letter directed to the Local Lodge membership, stating that it had come to his attention that a petition calling for a re-vote was circulating and encouraging members to sign the petition.  He also stated that, in order to "make sure that these efforts of scheduling a re-vote weren't in vain," he contacted Siemens to see if they would still accept the MOU if the Union agreed to it.  (J.A. 387).  On March 28, 2003, Spain posted an "official announcement" of a re-vote, which was to take place on April 2, 2003.  (J.A. 389).  On April 2, 2003, the MOU was approved by a vote of 245 to 144.

On April 3, 2003, after the re-vote, the International allegedly put the Local Lodge under a trusteeship because, among other things, the Local Lodge's meetings had evolved to a point where verbal and physical confrontations were taking place between Local Lodge members. The Local Lodge's office hours were restricted from April 2003 to September 2003. By the end of October 2003, however, the Local Lodge was no longer under a trusteeship.

In August 2004, with the CBA due to expire on August 31, 2004, the Union and Siemens entered into a new CBA (the New CBA), which was ratified by a vote of 190 to forty-two. The New CBA contains the continuous shift provisions provided for in the MOU. Siemens remained in Newport News and did not move its plant's operations to Mexico.

On September 30, 2003, the plaintiffs, a minority faction of the Local Lodge's members unhappy with the manner in which Siemens and the Union handled the switch to continuous shift operations, filed this lawsuit against Siemens and the Union. Before the defendants filed a responsive pleading, the plaintiffs filed an amended complaint on October 17, 2003. Count One was a "hybrid" § 301(a) claim under the Labor Management Relations Act (LMRA), 29 U.S.C. § 185, against Siemens and the Union. Count Two alleged that the defendants committed several civil RICO violations. Count Three alleged that the Union violated the plaintiffs' free speech

rights and Count Four alleged that the International imposed an illegal trusteeship.

On November 6, 2003, Siemens filed a motion to dismiss the plaintiffs' amended complaint. On January 26, 2004, the district court granted Siemens' motion.

On March 16, 2004, the Union filed a motion to dismiss, which the district court granted as to Counts Two and Four. In its decision, the district court granted the plaintiffs leave to amend their complaint with regard to Count One, allowing the plaintiffs to raise a stand-alone claim against the Union for breach of the duty of fair representation under 28 U.S.C. § 1337 and 29 U.S.C. § 159(a). The motion to dismiss was denied as to Count Three.

On June 2, 2004, the plaintiffs filed an amended complaint against the Union, alleging in Count One that the Union breached its duty of fair representation and alleging in Count Two that the plaintiffs' free speech rights were violated. On September 24, 2004, the Union filed a motion for summary judgment. The district court granted the motion, and the plaintiffs noted a timely appeal.

II

The plaintiffs contend that the district court erred when it dismissed Count One of the October 17, 2003 amended complaint for a lack of subject matter jurisdiction. More specifically, the plaintiffs claim that the district court had subject matter

jurisdiction over Count One, which alleged that Siemens breached the CBA and simultaneously the Union breached its duty of fair representation, when the defendants breached Paragraph 204 of the CBA which provided that any modification of "any terms or conditions contained" in the CBA must be "made and executed in writing" and "ratified by the Union." (J.A. 105). As the plaintiffs' argument goes, the MOU was invalid because the MOU presented to the Local Lodge's membership for a vote was not signed and, in any event, the MOU was never ratified.

In order to prevail on the "hybrid" § 301(a) claim alleged in Count One of the October 17, 2003 amended complaint, the plaintiffs had to prove that the Union "breached its duty of fair representation" and that Siemens "violated the collective bargaining agreement." Thompson v. Aluminum Co. of America, 276 F.3d 651, 656 (4th Cir. 2002).[2] "[I]f the first claim anchored in the employer's alleged breach of the [CBA] fails, then the breach of duty of fair representation claim against the union must

_____

[2]Section 301(a) of the LMRA provides:

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).

necessarily fail with it." White v. Anchor Motor Freight, Inc., 899 F.2d 555, 559 (6th Cir. 1990).

The pertinent language of § 301(a) excludes from federal court jurisdiction suits challenging the validity of a CBA. Textron Lycoming Reciprocating Engine Div., Avco Corp. v. United Auto., Aerospace & Agric. Implement Workers of America, 523 U.S. 653, 657 (1998) ("Suits for violation of contracts under § 301(a) are not suits that claim [the] contract is invalid, but suits that claim [the] contract has been violated.") (citation and internal quotation marks omitted). Indeed, a "plaintiff must allege breach of an existing collective bargaining contract in order to avail itself of jurisdiction under § 301 of the Act." A.T. Massey Coal Co. v. Int'l Union, 799 F.2d 142, 146 (4th Cir. 1986); see also Int'l Longshoremen's Ass'n v. Cataneo Inc., 990 F.2d 794, 800 n.15 (4th Cir. 1993) (reaffirming A.T. Massey Coal Co.).

In this case, the gist of the plaintiffs' hybrid § 301(a) claim is that the MOU is invalid. To be sure, the plaintiffs seek to have the MOU declared invalid and the provisions of the CBA "[r]einstated." (J.A. 49). However, under our jurisprudence, we are prohibited from making an inquiry into the validity of a contract; rather, we must confine ourselves to deciding whether a contract has been breached. A.T. Massey Coal Co., 799 F.2d at 146. Considering that there is no allegation, let alone evidence, that the MOU was breached, we cannot take issue with the district

court's decision to dismiss Count One of the October 17, 2003 amended complaint.[3]

III

The plaintiffs also contend the district court erred when it dismissed their trusteeship claim.  This contention lacks merit.

The Labor-Management Reporting and Disclosure Act (LMRDA), 29 U.S.C. § 462 et seq., mandates that any trusteeship that is imposed conform to the constitution and bylaws of the union and the purposes for which the trusteeship is imposed be legitimate.  29 U.S.C. § 462.[4]  Given the countless circumstances that might give

_____

[3]We also note that the plaintiffs' claim on the merits is exceedingly weak.  Paragraph 204 did not require that the actual signed copy of the MOU be presented to the Local Lodge's membership.  All that is required is that the agreement be signed and in writing and that the agreement be ratified by the membership.  In this case, the record contains a written, signed MOU, and there is no evidence that the terms of the signed MOU differed from the MOU presented to the membership for a vote.  Moreover, there is no evidence that the signatures on the signed MOU are fraudulent.  Finally, the MOU unquestionably was ratified by the membership in the vote that took place on April 2, 2003.

[4]Title III of the LMRDA provides in part:

Trusteeships shall be established and administered by a labor organization over a subordinate body only in accordance with the constitution and bylaws of the organization which has assumed trusteeship over the subordinate body and for the purpose of correcting corruption or financial malpractice, assuring the performance of collective bargaining agreements or other duties of a bargaining representative, restoring democratic procedures, or otherwise carrying out the legitimate objects of such labor organization.
(continued...)

- 11 -

rise to a trusteeship, "Congress specifically declined to attempt to detail all of the legitimate reasons for which a trusteeship might be imposed, leaving for the courts the development of common law limiting principles."  Becker v. Indus. Union of Marine and Shipbuilding Workers of America, AFL-CIO, 900 F.2d 761, 767-68 (4th Cir. 1990).

Congress also recognized that second guessing the judgments culminating in trusteeships could be both difficult and impractical.  Accordingly, a presumption of validity attaches to trusteeships that are imposed for limited duration and in a manner consistent with the procedural mandates of the LMRDA.  Id. at 768 ("Recognizing the delicate judgments which international officers are called upon to make in imposing a trusteeship and conscious of the relative inexpertness of outsiders, the [LMRDA's] guideline for evaluating a trusteeship supplies a presumption of validity, limited in duration, when certain procedural requirements are met.").[5]

---

[4](...continued)
29 U.S.C. § 462.

[5]Title III of the LMRDA also provides in part:

In any proceeding pursuant to this section a trusteeship established by a labor organization in conformity with the procedural requirements of its constitution and bylaws and authorized or ratified after a fair hearing either before the executive board or before such other body as may be provided in accordance with its constitution or bylaws shall be presumed valid for a
(continued...)

The plaintiffs in this case claim the International's conduct violated § 462.  In particular, the plaintiffs posit that the trusteeship was not established in conformity with the International's bylaws.

The plaintiffs' trusteeship claim founders for the simple reason that the claim is moot.  Several courts have held that, once a trusteeship is terminated, all claims challenging the propriety of the trusteeship become moot.  See  Laborers' Int'l Union v. Nat'l Post Office Mail Handlers, 880 F.2d 1388, 1393 (D.C. Cir. 1989); Air Line Stewards and Stewardesses, Local 550 v. TWU, 334 F.2d 807-08 (7th Cir. 1964); see also Stevens v. Northwest Indiana Dist. Council, United Bhd. of Carpenters, 20 F.3d 720, 726 (7th Cir. 1994) (resolving case on standing grounds rather than mootness where trusteeship terminated prior to suit being filed); cf. Thompson v. OPEIU, 74 F.3d 1492, 1505 (6th Cir. 1996) (holding that termination of a trusteeship does not moot trusteeship claim where claim was "an action at law to recover damages for the suppression of Title I rights as a result of the imposition of a trusteeship").

_____

[5](...continued)
period of eighteen months from the date of its establishment and shall not be subject to attack during such period except upon clear and convincing proof that the trusteeship was not established or maintained in good faith for a purpose allowable under section 462 of this title.

29 U.S.C. § 464(c).

- 13 -

In this case, we believe the application of the doctrine of mootness to the plaintiffs' trusteeship claim is mandated. The trusteeship terminated by the end of October 2003. There really is no relief that the court could fashion to requite the plaintiffs. There is no allegation of lost wages, and the plaintiffs' counsel conceded at oral argument that the only relief the plaintiffs are seeking is injunctive relief essentially to prevent the International from imposing another trusteeship on the Local Lodge. At this point, such relief is too speculative and, in fact, unwarranted, considering the Local Lodge overwhelmingly approved the New CBA which included the continuous shift provisions contained in the MOU.

## IV

The plaintiffs raise other arguments that they contend should be resolved in their favor. We have reviewed these arguments and find them to be without merit. Accordingly, for the reasons stated herein, the judgment of the district court is affirmed.

<u>AFFIRMED</u>

SHEDD, Circuit Judge, concurring in the result:

I fully concur in Parts I, III, and IV of the majority opinion. As to Part II, Count One of the Amended Complaint is captioned "Breach of Duty of Fair Representation and Breach of CBA," and Paragraph 26 asserts a material breach of the CBA. To the extent that Count One does assert a breach of the CBA, the claim fails on its merits. Therefore, I concur in the result reached by the majority on Part II.