**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 15-2499**

INTERNATIONAL LONGSHOREMEN'S ASSOCIATION, LOCAL 333; RIKER J. MCKENZIE, JR.; EZEKIEL GIVENS; AVON ALLISON; DERRICK ARTER; JAMES ANDERSON; RASUL A. AQUIL; ANDRE BENNETT; STANLEY BERRY; ALBERT JASON BOYD; GARY D. BREWINGTON; PAUL J. BRISCOE; KENNARD BROWN; QUANTA BROWN; MOAB BROWN-BEY; GARY KENNETH BURRELL; SHERMAN CANNON; JEROME CARTER; STACEY M. CHASE; CHRISTOPHER COLBERT; CARYN J. CONYERS; ANTIONE CRAWFORD; CULMER BARRY, JR.; RICHARD DANIEL; PRENTICE DENNIS; CHRISTOPHER DUNNOCK; ERIC DUVALL, SR.; ERIC DUVALL, JR.; JOHN D. EATON; KEITH FERGUSON; DAMON FLEARY, SR.; ERIKA GAINES; TODD A. GALLOWAY; NATHAN GILMER; SCOTT L. GIVENS; AMANDA GRAVES; JOSEPH B. GREEN, JR.; TEION HAIRSTON; TAAVON HALL; KEASHA HANNAH; JOSEPH A. HARDEN, IV; DIANE HIBLER; DOMENIQUE HOLDEN; SHAWN JACKSON; CARL LEE JOHNSON, JR.; CHARLES JOHNSON; MARIO JOHNSON, JR.; MAURICE JOHNSON; CALVIN E. JONES; GEORGE JONES; WAYNE JONES; PARKER RAY KEY; STEVEN KNIGHT; MARCEL LARKINS; CHARMAINE V. LITTLE; DERICK LITTLE; EUGENE N. LITTLE; TERRY LONG; RODNEY K. MARTIN; JAMES LAMONT MCNAIR; STEVEN B. MILLER, SR.; WALTER C. MOORE; ANWAR MUHAMMAD; DANA MUNDELL; GREGORY JEROME MURRAY; KEVIN MYRICK; CHARLES NELSON, JR.; NATHANIEL L. PRYOR, JR.; TYRONE E. QUEEN, SR.; EMANUEL Q. REED; ALISHA RHODES; MARCUS RICHARDSON; MAURICE SHERROD; VON A. SIMON; EVERETT J. SMITH; RANDOLPH SMITH; ANDREW SMITHSON, SR.; BOBBY SYDNOR; KELLY TOREZ TALBERT; ALLEN R. TAYLOR; DELVIN THOMPSON; KEVIN TUCKER; HAYWARD WALLACE; PHILLIP WEST; FREDERICK WHITE; DANTE WILLIAMS; HARRISON WILLIAMS; REGINALD JEROME WILSON; RANDY WRIGHT; JOSEPH EVANS; DARYL ESTEP; ERIC RIDGEWAY; JAMAL EVANS; LAMONT COGER; ALPHONSO WATSON; MAURQUISE MOODY; MAURICE MOODY; JARMALL MCKEEVER; AARON BARNETT; SEMAJ WASHINGTON; RONALD MCBRIDE,

Plaintiffs – Appellants,

v.

INTERNATIONAL LONGSHOREMEN'S ASSOCIATION, AFL-CIO; HAROLD J. DAGGETT; BENNY HOLLAND, JR.; STEPHEN KNOTT; GERALD OWENS; JOHN D. BAKER; STEAMSHIP TRADE ASSOCIATION OF BALTIMORE, INCORPORATED,

Defendants – Appellees.

───────────────

Appeal from the United States District Court for the District of Maryland, at Baltimore. Catherine C. Blake, Chief District Judge. (1:15-cv-00813-CCB)

───────────────

Argued: January 24, 2017                    Decided: May 2, 2017

───────────────

Before GREGORY, Chief Judge, KING, Circuit Judge, and DAVIS, Senior Circuit Judge.

───────────────

Affirmed in part, vacated in part, and remanded by unpublished per curiam opinion.

───────────────

**ARGUED:** Bruce M. Luchansky, LUCHANSKY LAW, Towson, Maryland, for Appellants. Kevin J. Marrinan, MARRINAN & MAZZOLA MARDON P.C., New York, New York; Michael J. Collins, THE LAW OFFICES OF MICHAEL J. COLLINS PC, Highland, Maryland, for Appellees. **ON BRIEF:** John P. Sheridan, MARRINAN & MAZZOLA MARDON P.C., New York, New York, for Appellees International Longshoremen's Association, AFL-CIO, Harold J. Daggett, Benny Holland, Jr., Stephen Knott, Gerald Owens, and John D. Baker.

───────────────

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Appellants are members of, and applicants for admission to, the Baltimore-based International Longshoremen's Association, Local 333 ("the Union"). Due in part to the Union's alleged noncompliance with a membership bylaw, the Union's parent organization, the International Longshoremen Association, AFL-CIO ("ILA"), denied the applicants' admission to the Union and concomitantly imposed a trusteeship intended to restore the Union's democratic procedures. Appellants filed suit, alleging that these actions violated the Labor-Management Reporting and Disclosure Procedure Act and the Labor-Management Relations Act. They also contend that discriminatory policies and practices in the Port of Baltimore violated a 1970 consent decree issued in an earlier case.

The district court dismissed the complaint for failure to state a claim and for the applicants' lack of standing. For the reasons set out below, we affirm in part and vacate and remand in part.

I.

A.

We recite below the relevant facts alleged in the operative complaint or incorporated into the complaint by reference.

The Union is composed of longshore workers employed at marine terminals in Baltimore, Maryland. It is the only ILA local union in Baltimore that is composed of and governed predominantly by persons of color. Until the imposition of the trusteeship (described *infra*), Riker McKenzie was the elected President of the Union and Ezekiel Givens, Aaron Barnett, Lamont Coger, Daryl Estep, and Ronald McBride were elected

3

members of the Union's executive board. Calvin Jones is a rank-and-file member of the Union (together, the "Member Plaintiffs").

The complaint asserts that the ILA "continually thwarted" the Union's democratic voice by repeatedly removing McKenzie from office. J.A. 90. Union membership elected McKenzie as its Vice President in 1987, as a member of the executive board in 2006, and as President in 2008. However, McKenzie consistently challenged the ILA's alleged "penchant for back door cooperation with the [Steamship Trade Association of Baltimore, Inc. ("STA")]" to insert "sweetheart" deals in negotiated collective bargaining agreements ("CBA"), J.A. 91, and his public advocacy for the interests of the Union's membership "raised the ire of [ILA] leadership," J.A. 90. In 2010, the ILA removed him from office. Later that year, McKenzie ran again for President and received an overwhelming majority of the votes in secret balloting. Nevertheless, the ILA refused to recognize McKenzie's reelection, disqualified him from consideration, and installed his defeated opponent as President. During the following election in December 2012, the Union's membership again elected McKenzie as President, a title he held until the imposition of the trusteeship.

In 2012, the Union admitted approximately 150 new members through a lottery process. Soon thereafter, Union members allegedly voted to stop admitting new members pending the outcome of ongoing negotiations for a new CBA.

The ILA Constitution sets forth the following criteria for admission and membership:

4

Any worker who is employed or seeks employment in a trade, industry or occupation within the jurisdiction of the I.L.A. shall be eligible to apply for membership and shall be admitted to membership without regard to race, age, sex, citizenship, or ethnic origin thirty (30) days after application unless just cause can be shown for rejection of the application. [Local unions] are permitted to establish additional requirements for membership so long as these requests comply with applicable law.

J.A. 94. Article V of the Union's bylaws enumerates the following additional requirements for membership:

Section 3. An applicant having made their [sic] application in proper form, having paid the initiation fee and having been approved by a vote of a majority of the membership present at a regular or special meeting of this Local Union shall be deemed a member.

J.A. 218.

In November 2013, Harold J. Daggett, the ILA President, wrote to the Union's executive board regarding two individuals who had unsuccessfully applied for membership. Daggett stated, "Inasmuch as both of these individuals appear to have been working at the craft covered by [the Union], they must be admitted to membership unless there is just cause to reject their application." J.A. 95. On July 2, 2014, having learned that one of the above individuals had yet to be admitted, Daggett again wrote to the executive board and stated, "[W]ith[in] 21 days from the date of this letter, please admit him to membership or inform me as to the good cause that prevents his admission." *Id.*

On July 10, 2014, in a response to Daggett's letter and directive, McKenzie advised that he would admit all recent applicants who worked or sought work in the relevant craft and jurisdiction. Approximately 500 applicants were processed and sworn

5

into membership by August 2014. These applicants were required to waive any refund of their initiation fees or dues, even if they never qualified for employment.

In early September 2014, Ronald Barkhorn — a Union member who had frequently filed charges against McKenzie and had allegedly "ma[de] no effort to mask his own antipathy for [McKenzie]," J.A. 97 — filed a complaint with the ILA. Barkhorn contended that the recent admission of 500 new members was improper in light of the Union's 2012 decision to accept no new members. Upon receiving this complaint, Daggett directed McKenzie to cease admitting new members until a committee was appointed to investigate the matter. The committee, which was composed of ILA Vice President Wilbert Rowell and ACD Vice President Robert Gladden, Jr., held a disciplinary hearing on September 29, 2014.

After considering the parties' evidence, the committee issued a report in November 2014. According to the report, the applicants were deemed not to be members of the Union because they had not obtained a majority-membership approval vote. The report also questioned the applicants' eligibility for membership, asserting there was no record that the applicants were working or seeking work in the relevant industry. Finally, the report took issue with the Union's allegedly improper practice of requiring signed waivers of any reimbursement of the applicants' fees and dues. Based on the above findings, the report made two recommendations: (1) that the recent applicants be stripped of their Union member status and (2) that the Union end its practice of having applicants sign an unconditional waiver of any refund of their fees and dues. Ninety-three of the

6

approximately 500 individuals who applied for and were ultimately denied membership constitute the remaining Appellants in this case (together, "the Nonmember Plaintiffs").

Based on the report's findings, the ILA began the process of determining whether it should impose a trusteeship over the Union. The charging letter opined that immediate action by the ILA was required to restore democratic procedures and create accurate membership lists for the upcoming CBA vote and Union election. The letter asserted that, having created these problems, the incumbent executive board was not in a position to correct the deficiencies. In November 2014, the ILA suspended the Union's officers, imposed a temporary trusteeship, and appointed Rowell as the temporary trustee. The trusteeship hearing took place in December 2014. During this time, the trustee and selected employees — rather than the Union's democratically-elected negotiation team — negotiated the terms of the CBA. Scott Cowan was chosen to draft contract proposals and negotiate on the Union's behalf. Cowan was the only white member of the incumbent executive board, and he was the only suspended board member invited to return to "assist in this crucial function." J.A. 103. Cowan allegedly opposed McKenzie's leadership, and he expressed an intention to run against McKenzie in the upcoming election.

On February 11, 2015, the ILA held a membership meeting to discuss its CBA proposal. The ILA broke custom in many ways: it conducted the meeting at the employer's terminal rather than at the union hall, it did not mail copies of the contract proposal to Union members in advance of the meeting, and it did not elect judges to assure a fair process. On February 13, 2015, the Union's membership voted to reject the

7

contract proposal. By this time, the ILA had revised the Union's membership list to ensure its accuracy, thereby fulfilling the stated purpose of the trusteeship. Nonetheless, on February 14, 2015, the Trusteeship Hearing Committee issued a report recommending that the temporary trusteeship be continued, and Rowell was later appointed the permanent trustee.

B.

On March 20, 2015, the Union, the Member Plaintiffs, and the Nonmember Plaintiffs filed suit against ILA, several ILA officers (together, the "ILA Defendants"), and the STA. They alleged that (1) the trusteeship was not imposed in good faith or in accordance with the minimum fair hearing requirements, thereby violating the Labor-Management Reporting and Disclosure Procedure Act ("LMRDA"), 29 U.S.C. § 462 *et. seq.* ("Count I"); (2) the ILA's refusal to admit the Nonmember Plaintiffs into the Union violated the Labor-Management Relations Act ("LMRA"), 29 U.S.C. § 185 ("Count II"); and (3) discriminatory policies and practices undertaken by the ILA and STA violated a 1970 consent decree entered in prior litigation involving some of the parties ("Count III"). After the filing of the complaint, the Union approved the new CBA.

On the Defendants' motions, the district court dismissed the complaint in its entirety. The court determined that, as nonmembers of the Union, the Nonmember Plaintiffs were unable to state a claim under the LMRDA (resulting in the dismissal of Count I as to them) and lacked standing to allege a claim under the LMRA (resulting in the dismissal of Count II). The court also dismissed Count I as to the Member Plaintiffs for failure to state a claim, and it dismissed Count III after concluding that Plaintiffs

8

lacked standing to modify the 1970 consent decree. Finally, the court dismissed the Union as a party plaintiff.

Appellants timely appealed. Following the conclusion of briefing before this Court, the ILA terminated the trusteeship, and the ILA Defendants filed a motion to dismiss the appeal as to Count I for lack of subject matter jurisdiction.

## II.

## A.

We begin our analysis with Count I of the complaint. In their pending motion to dismiss, the ILA Defendants assert that the recent termination of the trusteeship rendered this aspect of the appeal moot. Because this issue implicates jurisdictional concerns, we address it first.

A case or claim becomes moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969). The ILA Defendants rely primarily on *Taylor v. Siemens VDO Auto. Corp.*, 157 Fed. App'x 557, 563 (4th Cir. 2005), wherein we held that claims challenging the propriety of the trusteeship become moot once the trusteeship is terminated. *See also Parks v. Int'l Bhd. of Elec. Workers*, 314 F.2d 886, 896 & n.10 (4th Cir. 1963) (noting that claims to set aside a trusteeship were mooted when the trusteeship was terminated). However, the nature of the plaintiffs' requested relief was critical to our holding in *Taylor*. The *Taylor* plaintiffs sought only injunctive relief "to prevent the International [Union] from imposing another trusteeship," and there was no allegation of lost wages or other monetary damages. *Taylor*, 157 Fed. App'x at 563. So viewed, we

9

reasoned there was "no relief that the court could fashion to requite the plaintiffs" once the trusteeship was lifted. *Id*.

Analogous circumstances are not present here. As to Count I, Appellants do seek injunctive relief — but they also seek reimbursement "for all expenditures and disbursements made by [the ILA Defendants] during the term of the Trusteeship for salaries and expenses of Defendants or any other officer or agent of Defendant International, and all other improper expenditures of [the Union's] funds made by them." J.A. 111. We note that such relief is possible under the LMRDA. *See* 29 U.S.C. § 464(a) (not limiting remedies to injunctive relief); *Local Union 13410 v. United Mine Workers of Am.*, 475 F.2d 906, 913 (D.C. Cir. 1973) ("The Local [Union] should also be permitted to recover whatever monetary damages it suffered due to the wrongful imposition of the trusteeship."); *Exec. Bd., Local Union No. 28, I.B.E.W. v. Int'l Bhd. of Elec. Workers*, 184 F. Supp. 649, 652 (D. Md. 1960) ("[I]f the facts justify it, an accounting under the [LMRDA] could be had for all funds coming into defendants' hands . . . and probably for all funds in their hands [during the trusteeship].").

Given the "live" monetary damages at issue in this claim, neither *Taylor* (which is nonprecedential, in any event) nor *Parks* mandate a finding of mootness. Indeed, if *any* claim challenging the propriety of a trusteeship were mooted upon the termination of the trusteeship, "international unions could impose trusteeships with impunity . . . and remain immune from legal scrutiny as long as they lifted the trusteeship before the plaintiff ha[d] his day in court." *See Thompson v. Office and Prof. Emps. Int'l Union, AFL-CIO*, 74

10

F.3d 1492, 1504 (6th Cir. 1996). Accordingly, we conclude that Count I has not been rendered moot, and we deny the motion to dismiss.

B.

We turn next to the merits of the district court's dismissal of Count I. This Court reviews de novo a district court's dismissal under Federal Rule of Civil Procedure 12(b)(6). *Kensington Volunteer Fire Dep't v. Montgomery Cty.*, 684 F.3d 462, 467 (4th Cir. 2012). In so doing, we accept all well-pleaded factual allegations as true, and we draw all reasonable inferences in favor of the nonmoving party. *Id.* To survive a Rule 12(b)(6) motion to dismiss, the complaint "must contain sufficient facts to state a claim that is 'plausible on its face.'" *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). We may also consider documents attached to the complaint or the motion to dismiss when conducting our review, "so long as [the documents] are integral to the complaint and authentic." *Kensington*, 684 F.3d at 467 (citation omitted).

1.

We begin with the Nonmember Plaintiffs' appeal, which turns on the question of membership. Only a "member or subordinate body of a labor organization" may file suit under the LMRDA for alleged violations of the Act's trusteeship provisions. 29 U.S.C. § 464(a). Given that the Nonmember Plaintiffs' purported admission to the Union failed to comply with the majority-approval bylaw, the ILA Defendants argued that these plaintiffs could not be deemed members of the Union. The district court agreed. It determined that membership was a necessary element for an LMRDA cause of action

11

and, given the Nonmember Plaintiffs' inability to satisfy this requirement, dismissed their claim pursuant to Rule 12(b)(6). *ILA, Local 333 v. ILA, AFL-CIO*, No. CCB-15-00813, 2015 WL 6693995, at \*4–5 (D. Md. Oct. 30, 2015). On appeal, the Nonmember Plaintiffs argue that the district court failed to properly consider the relevant alleged facts: namely, that the Union has *never* applied the majority-approval bylaw.

We commence our analysis by defining the term "member" under the LMRDA, which includes, in relevant part, "any person who has fulfilled the requirements for membership" in the labor organization. 29 U.S.C. § 402(o). Notably, the LMRDA's protections are not limited "to those who have been [formally] admitted to membership in a labor organization and who are recognized as members by that organization." *Hughes v. Local No. 11 of Int'l Ass'n of Bridge, Structural & Ornamental Ironworkers, AFL-CIO*, 287 F.2d 810, 815 (3d Cir. 1961). Rather, "the Act's protection is extended to those who are everything that members are, to those who are *in substance members*, despite the fact that the officials of the particular labor organization have not performed the ministerial acts precedent to formal admission and recognition." *Id*. (emphasis added). Because the Union has never utilized the majority-approval bylaw, the Nonmember Plaintiffs argue, any purported failure to comply with this bylaw cannot prevent the applicants' proper admission to membership. They contend that because they otherwise satisfied the requirements for membership, they are "in substance members" and are thereby able to state a claim under the LMRDA. Accordingly, their argument turns on whether the majority-membership vote constitutes a mere "ministerial" act.

12

Although this Circuit has not yet spoken on this specific issue, we find the reasoning of our sister circuits to be persuasive. Where a union's constitution *requires* it to accept every eligible applicant for membership, an eligible applicant that satisfies all the membership requirements will be considered an "in substance member" despite the union's failure to formally admit the applicant. *See Hughes*, 287 F.2d at 815–16. Under this analysis, the union's approval of the membership application is nothing more than a ministerial formality. However, where the union *retains discretion* over membership decisions, a rejected applicant will not be deemed an "in substance member" even if she otherwise satisfied the requirements for membership. *See Brady v. Int'l Bhd. of Teamsters Local 817*, 741 F.3d 387, 389–90 (2d Cir. 2014) (requirements for union membership are not ministerial where the union constitution reserved discretion to reject the application); *Stanley v. Int'l Bhd. of Elec. Workers, AFL-CIO CLC*, 207 Fed. App'x 185, 188 (3d Cir. 2006) (same); *Gavin v. Structural Iron Workers Local No. 1*, 553 F.2d 28, 31 (7th Cir. 1977) (application approval is not ministerial where the union constitution reserved discretion to reject a transfer applicant). This is true even if the union "only rarely exercised its discretion to reject an eligible applicant." *Brady*, 741 F.3d at 390. Indeed, in adopting this reasoning, one circuit determined that the requirement of a favorable membership-majority vote "can hardly be characterized as a mere formality or ministerial act" for admission to the union. *Moynahan v. Pari-Mutuel Emp. Guild of Cal., Local 280*, 317 F.2d 209, 210 (9th Cir. 1963).

Applying the above formulation to this case, we observe "[t]here is no provision in the [ILA] Constitution that requires [the Union] to accept all eligible applications." *See*

13

*Brady*, 741 F.3d at 390. Rather, the ILA Constitution expressly provides that "[Local unions] are permitted to establish additional requirements for membership so long as these requests comply with applicable law." J.A. 94. One such requirement was the majority-approval vote by the Union's membership, which clearly endowed the Union with "discretion over membership decisions." *Brady*, 741 F.3d at 390. The majority-approval vote is therefore *not* a ministerial step in the membership process, and these plaintiffs – who openly acknowledge that they did not obtain the necessary votes for admission – cannot qualify as "in substance members" of the Union.

The Nonmember Plaintiffs attempt to distinguish *Brady* by arguing that the bylaw in this case was *never* rather than rarely exercised. This argument misses the point: the bylaw gave the Union discretion over the applicants' admission, and whether the Union ever chose to exercise this discretion is immaterial. *See Brady*, 741 F.3d at 390. Moreover, the district court correctly observed that the majority-approval bylaw was written with "express and unambiguous language." *ILA, Local 333*, 2015 WL 6693995, at *5. A union's constitution "is a contract between the [u]nion and its members," *Int'l Org. of Masters v. Prevas*, 175 F.3d 341, 343 (4th Cir. 1999) (citation omitted), and "express terms are given greater weight than course of performance [or] course of dealing" when interpreting contractual terms, *Riethman v. Berry*, 287 F.3d 274, 277 (3d Cir. 2002) (quoting Restatement (Second) of Contracts § 203(b) (1981)). Accordingly, the Union's alleged course of performance regarding the majority-approval vote does not render the bylaw ministerial, nor should this course of performance be afforded greater weight than the bylaw's express and unambiguous language.

14

For the above reasons, we agree with the district court's reasoning and affirm.

2.

We turn next to the Member Plaintiffs' claim. Under the LMRDA, trusteeships may be established "for the purpose of correcting corruption or financial malpractice, assuring the performance of collective bargaining agreements or other duties of a bargaining representative, restoring democratic procedures, or otherwise carrying out the legitimate objects of such labor organization." 29 U.S.C. § 462. Trusteeships implemented in accordance with the procedural requirements of a union's constitution and bylaws "shall be presumed valid for a period of eighteen months from the date of its establishment." 29 U.S.C. § 464(c). Accordingly, to successfully challenge the imposition of the trusteeship during this period, a plaintiff "must either demonstrate that the trusteeship was not imposed in conformity with procedural requirements, or, [she] must produce 'clear and convincing' proof that the trusteeship was not established or maintained in good faith for a purpose allowed by statute." *Teamsters Local Union No. 406 v. Crane*, 848 F.2d 709, 712 (6th Cir. 1988). A plaintiff may assert the absence of good faith by adequately alleging "that the proffered reasons for imposing the trusteeship are pretextual." *Id.* at 714.

In the complaint, the Member Plaintiffs posit that the imposition of the trusteeship violated the LMRDA because the allegedly legitimate purpose for the trusteeship, to

15

restore democratic order, was pretextual.[1] They asserted that the trusteeship was imposed primarily to sideline the Union's democratically-elected officers, seize control of the Union, and exert influence over the upcoming CBA vote. The district court concluded that these allegations "f[ell] short." *ILA, Local 333*, 2015 WL 6693995, at *6. The court focused on the Plaintiffs' concession that they failed to comply with the majority-approval bylaw when admitting new members in the months preceding the CBA vote. "While it may be conceivable that the ILA [D]efendants imposed the trusteeship as pretext for controlling the upcoming votes [on the CBA]," the court reasoned, "the plaintiffs' reliance on a timeline dictated by their violations of the bylaws is not enough to push 'their claims across the line from conceivable to plausible.'" *Id*. at *7 (quoting *Twombly*, 550 U.S. at 570). It therefore found that Plaintiffs had failed to adequately state a claim under the LMRDA. *Id*.

Our reading of the complaint demands the opposite conclusion. By focusing primarily on the bylaw violation, the district court gave inadequate consideration to several additional factual allegations that, taken together, illustrate a plausible claim of

---

[1] The complaint also alleged that the December 4 trusteeship hearing was not a "fair hearing." J.A. 109. The district court determined that this allegation was conclusory and, even when viewing the alleged facts in a light favorable to Appellants, concluded that the ILA imposed the trusteeship "in accordance with the 'minimum fair hearing requirements.'" *ILA, Local 333*, 2015 WL 6693995, at *6 (citation omitted). Because Appellants do not raise in this appeal any arguments of procedural deficiencies as to the imposition of the trusteeship, we do not address the above allegation here.

16

pretextual intent.[2] For example, the complaint alleges that the ILA repeatedly removed McKenzie as president to silence his advocacy, gain control over the Union, and exert influence over the CBA ratification process. After suspending all members of the predominantly African American executive board, the ILA allegedly brought back the only white member, Cowan, to engage in CBA negotiations. According to the complaint, Cowan had been the only board member to openly oppose McKenzie, and his employment defied the Union's practice of using a democratically-elected Wage Scale Committee to negotiate CBA terms. Moreover, once the ILA successfully revised the membership lists and ensured its accuracy (thereby obviating the stated purpose of the trusteeship), it nonetheless chose to continue rather than dissolve the trusteeship. These allegations suggest that by imposing the trusteeship, the ILA improperly sought to deprive the Union's members of their democratic voice during a critical CBA negotiation process. Contrary to the district court's conclusion, we are persuaded that the facts alleged were sufficient to push this "claim[] across the line from conceivable to

---

[2] In their brief, Appellants also assert that after the February 2015 vote rejecting the proposed CBA, the Trustee convinced nineteen crane mechanics to apply for Union membership so they could vote in favor of the next contract. Appellants' Br. 15. Appellants acknowledge that the CBA was approved by the membership in March 2015, but they assert that this approval would not have been possible without the recently-added crane mechanics. *Id*. We note, however, that these allegations do not appear anywhere in the complaint and are raised for the first time in the parties' briefing. Because "[i]t is well-established that parties cannot amend their complaints through briefing," *S. Walk at Broadlands Homeowner's Ass'n v. Openband at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013), we decline to consider these allegations in our review of the district court's 12(b)(6) dismissal.

plausible" regarding Defendants' pretextual intent. *See Twombly*, 550 U.S. at 570. We therefore vacate the dismissal of Count I as to the Member Plaintiffs, and we remand for further proceedings consistent with this opinion.

III.

Next, we consider the district court's dismissal of Count II, wherein the Nonmember Plaintiffs allege that the denial of their admission into the Union violated § 301 of the LMRA. They argue that the district court erred when it dismissed this claim for lack of subject matter jurisdiction. We review de novo the district court's dismissal for lack of jurisdiction for want of standing. *24th Senatorial Dist. Republican Committee v. Alcorn*, 820 F.3d 624, 628 (4th Cir. 2016).

A suit under § 301 "must be a suit either for violation of a contract between an employer and a labor organization representing employees in an industry affecting commerce or for violation of a contract between such labor organizations." *Wooddell v. Int'l Bhd. of Elec. Workers, Local 71*, 502 U.S. 93, 98 (1991). An international union's "constitution may be fairly characterized as a contract between labor organizations." *United Ass'n of Journeymen & Apprentices of Plumbing & Pipefitting Indus. v. Local 334*, 452 U.S. 615, 619 (1981). However, only those with "personal standing" to enforce the underlying contract may bring suit under § 301, such as individual union members who are "often the beneficiaries" of union constitutions. *See Wooddell*, 502 U.S. at 99 n.4, 101.

Accordingly, the district court properly determined that whether the Nonmember Plaintiffs have standing to bring this claim turns on whether they can be deemed

18

"members" of the Union. *ILA, Local 333*, 2015 WL 6693995, at *7–8. For the reasons asserted above, we conclude that these plaintiffs were not members of the Union and were not intended beneficiaries of the ILA Constitution. The record before the district court in this case was sufficient to decide this jurisdictional question, and the court did not err when dismissing this claim at the pleading stage. *See Alcorn*, 820 F.3d at 629. We therefore affirm.

IV.

Finally, we turn to Count III of the complaint. Count III alleges violations of a 1970 consent decree issued in an earlier case involving the Union's predecessors, Locals 829 and 858 ("the Predecessor Locals"). The decree was entered to enjoin the Predecessor Locals and related parties from discriminating on the basis of race. It mandated the merger of the segregated Locals, implemented a race-neutral seniority system, and imposed various reporting requirements.

The district court acknowledged that Appellants — who were not parties to the decree — may nonetheless qualify as intended third-party beneficiaries, a status that would confer standing to enforce the consent decree. *ILA, Local 333*, 2015 WL 6693995, at *8 (citing *Beckett v. Air Line Pilots Ass'n*, 995 F.2d 280, 286 (D.C. Cir. 1993) and *Bowman v. Md. Mass Transit Admin.*, 43 F.3d 1465, at *1 n.1 (4th Cir. 1994) (unpublished)). Upon its review of the allegations and requested remedies, however, the district court concluded that Appellants "s[ought] *modification* of the consent decree rather than enforcement of its existing terms." *Id*. (emphasis added). Holding that nonparties lack standing to modify the terms of a consent decree, the court dismissed

19

Count III pursuant to Rule 12(b)(1). *Id.* On appeal, the Appellants' sole argument is that they seek to enforce rather than modify the consent decree's existing terms. Like the district court, we find this argument to be without merit.

Generally, consent decrees are construed as contracts for purposes of enforcement. *Hook v. Ariz. Dep't of Corr.*, 972 F.2d 1012, 1014 (9th Cir. 1992). "[T]he 'scope of a consent decree must be discerned within its four corners, and not by reference to what might satisfy the purposes of one of the parties to it' or by what 'might have been written had the plaintiff established his factual claims and legal theories in litigation.'" *Firefighters Local Union No. 1784 v. Stotts*, 467 U.S. 561, 574 (1984) (quoting *United States v. Armour & Co.*, 402 U.S. 673, 681–82 (1971)). Notably, "[a] federal district court may not use its power of enforcing consent decrees to enlarge or diminish the duties on which the parties have agreed and which the court has approved." *Johnson v. Robinson*, 987 F.2d 1043, 1046 (4th Cir. 1993) (citations omitted).

The complaint alleges numerous instances of racial discrimination in the ports of Baltimore; it asserts that the ILA has failed to promote African Americans into leadership positions and that subjective testing criteria, standards for imposing discipline, drug and alcohol policies, training programs, and clearance credential requirements have a disparate impact on African Americans or have been enforced in a racially discriminatory manner. Appellants argue that these actions violated the consent decree's adoption of a race-neutral seniority system as well as its broad injunction against racial discrimination in longshore employment. They therefore request an injunction that would "bar[] further discriminatory acts or omissions . . . in violation of the spirit or the letter of the decree or

20

in violation of any federal law barring discrimination," and they request that the court "affirmatively requir[e] Defendants to implement employment practices that do not discriminate against Plaintiffs or any African American members of [the Union] and which operate based on objective, rather than subjective, factors." J.A. 125.

The consent decree "permanently enjoined and restrained" the Predecessor Locals and related parties from "engaging in any act or practice which has the purpose or effect of discriminating" on the basis of race or color, J.A. 60, and it enumerated four discrete remedies to effectuate this purpose: it (1) ordered the merger of the segregated Locals; (2) imposed a race-neutral seniority system; (3) ordered STA to engage in negotiations to assure that African Americans, "without discrimination," are "selected for the position of ship foremen . . . in a manner designed to correct the effects of past discrimination;" and (4) ordered reporting requirements over a five-year period. J.A. 61-67. Although the consent decree uses language that enjoins engagement in any discriminatory practice, it plainly did not envision a remedy that combats race discrimination in *every* aspect of employment at the Port. The complaint makes clear that Appellants seek an injunction that (1) "bar[s] further discriminatory acts or omissions" violating the decree or "*any federal law* barring discrimination" not considered by the decree and (2) "affirmatively requir[es]" the implementation of new or improved employment practices related to training, testing, certification, and discipline, aspects of longshore employment that were not identified or addressed by the decree. J.A. 125 (emphasis added). Because Appellants request remedies that would greatly "enlarge . . . the duties on which the parties have agreed and which the court has approved," *Johnson*, 987 F.2d at 1046

21

(citations omitted), we agree with the district court that Appellants seek to modify rather than enforce the terms of the consent decree.

Accordingly, we affirm the dismissal of Count III for lack of standing.

V.

For the reasons set forth above, the judgment is affirmed in part, vacated in part, and the case is remanded for further proceedings.

*AFFIRMED IN PART,*
*VACATED IN PART,*
*AND REMANDED*